CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 2 2 2014

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CROSSROADS EQUITY PARTNERS, LLC, a Virginia Limited Liability Company, ) ) ) | |
| Plaintiff, ) | Civil Action No. 3:11CV00069 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| DOGMATIC PRODUCTS, INC., et al., ) ) | By: Hon. Glen E. Conrad Chief United States District Judge |
| Defendants. ) | |

This case is presently before the court on the motion for attorneys' fees and expenses filed by the plaintiff, Crossroads Equity Partners, LLC ("CEP"). For the following reasons, the motion will be granted.

## Background

On December 13, 2010, CEP loaned Dogmatic Products, Inc. ("DPI") $150,000.00. The loan is evidenced by a Promissory Note (the "Note"), and secured by an Unconditional Guaranty (the "Guaranty") provided by Reynolds E. Moulton, III and Maura Woodward Moulton.

On October 21, 2011, after DPI failed to make payments required under the Note, CEP filed suit against DPI and the Moultons for breach of the Note and Guaranty. The defendants eventually retained counsel to represent them in connection with the claims brought by CEP. In the answers filed by counsel, the defendants admitted that DPI had not made payments required by the Note; that CEP had demanded payment of all sums under the note and that DPI had not paid such sums; and that a substantial sum was due under the Note and Guaranty.

Relying on the defendants' admissions and a declaration from Charles Lunsford, its owner and manager, CEP moved for summary judgment on March 14, 2012. On April 26, 2012, having

received no brief in opposition from the defendants and no further requests for an extension of time, CEP filed a request for entry of summary judgment in its favor. The court entered a final order granting CEP's motion for summary judgment on May 8, 2012.

Exactly one year later, the defendants, after retaining new counsel, filed a motion for relief from the final order, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The court held a hearing on the Rule 60(b) motion on November 4, 2013. At the conclusion of the hearing, the defendants requested leave to file a declaration or other evidence in support of their motion. By order entered November 6, 2013, the court granted the defendants' request and gave them ten days to submit additional evidence. Thereafter, the defendants filed a seventeen-page declaration from Mr. Moulton along with forty-two pages of exhibits. CEP subsequently requested and obtained leave to depose Mr. Moulton. Following the conduct of Mr. Moulton's deposition, CEP filed a supplemental response on December 12, 2013. By opinion and order entered February 19, 2014, the court denied the defendants' motion.

On March 5, 2014, CEP filed the instant motion seeking to recover attorneys' fees and expenses incurred in opposing the Rule 60(b) motion. The matter has been fully briefed and is ripe for decision.[1]

## Discussion

### I. Attorneys' Fees

The availability of attorneys' fees in a diversity action is generally governed by state law. See Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 631 (4th Cir. 1999) (citing Culbertson v. McCall Coal Co., 495 F.2d 1403, 1405-06 (4th Cir. 1974)). In Virginia, courts adhere to "the so-called 'American Rule,' [under which] a prevailing party generally cannot recover attorneys'

---

[1] Neither side requested a hearing on the motion for attorneys' fees and expenses.

2

fees from the losing party.'" Dewberry & Davis, Inc. v. C3NS, Inc., 732 S.E.2d 239, 243 (Va. 2012) (quoting Ulloa v. QSP, Inc., 624 S.E.2d 43, 49 (Va. 2006)). "This rule, however, does not prevent parties to a contract from adopting provisions that shift the responsibility of attorneys' fees to the losing party in disputes involving the contract." Id.

In this case, both the Note and the Guaranty speak to attorneys' fees and expenses. The Note provides that DPI "will pay all reasonable costs and expenses, including reasonable attorney's fees, incurred by [CEP] if [CEP] initiates suit for the purpose of collection of this Promissory Note." Note at 2, Docket No. 1-2. Similarly, the Guaranty provides that Mr. and Mrs. Moulton must pay "all costs and expenses, including reasonable attorneys' fees, which may be incurred in successfully enforcing the payment of any amount or the performance of any Obligation or this Guaranty." Guaranty at 1, Docket No. 1-3. Under the plain meaning of these contractual provisions, CEP is entitled to an award of reasonable fees and expenses incurred in conjunction with its continued efforts to collect the payments due under the Note and the Guaranty.

To properly calculate a reasonable fee award, the court must determine the appropriate lodestar figure. McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013). This figure is determined by multiplying the number of hours reasonably expended by a reasonable hourly rate. Id. To ascertain what is reasonable in terms of hours expended and rates charged, the court considers the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) (the "Johnson factors"). Id.; see also Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009) ("In deciding what constitutes a 'reasonable' number of hours and rates, we have instructed that a district court's discretion should be guided by the [Johnson] factors."). Those factors are as follows:

>(1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

McAfee, 738 F.3d at 88 n.5.

In this case, CEP seeks reimbursement for $26,660.06 in attorneys' fees and expenses. This figure includes $24,810.00 in attorneys' fees for 76.6 hours of work, which was mostly billed at the rate of $325.00 per hour.[2] Applying the relevant Johnson factors, the court finds that the requested fees are reasonable.

To support its fee request, CEP provided detailed records documenting the time and labor expended on its behalf. The vast majority of time was billed by senior associate J.P. McGuire Boyd, Jr.[3] Mr. Boyd expended a total of 73.3 hours working on the case after the defendants filed their Rule 60(b) motion in May of 2013. This included time reviewing and analyzing the defendants' motion and supporting memorandum; researching the legal issues raised by the defendants; preparing an initial opposition memorandum; preparing for and attending the November 4, 2013 hearing on the defendants' motion; reviewing and analyzing the declaration and exhibits subsequently submitted by the defendants; preparing for and attending the deposition of Mr. Moulton; preparing a response to Mr. Moulton's declaration; and preparing the instant motion for attorneys' fees and expenses. The court rejects the defendants' argument that the

---

[2] CEP was represented by attorneys from the law firm of Williams Mullen. CEP seeks reimbursement for work performed by two partners, a senior associate, and three paralegals. The partners billed a combined total of 1.4 hours of work at rates of $425.00 and $460.00, respectively. The senior associate charged an hourly rate of $325.00. The paralegals charged an hourly rate of $190.00.

[3] Mr. Boyd is now a partner at Williams Mullen.

amount of time expended by Mr. Boyd was excessive, and instead finds that it was entirely reasonable in light of the defendants' tenacious efforts to vacate the judgment entered against them. See Weitz Co. v. MH Washington, 631 F.3d 510, 530 (8th Cir. 2011) ("A party cannot litigate tenaciously and then be heard to complain about the time necessarily spent overcoming its vigorous defense.") (internal citation and quotation marks omitted).

The court also finds that CEP produced sufficient evidence to establish the reasonableness of Mr. Boyd's $325.00 hourly rate. In accordance with existing precedent, CEP submitted an affidavit from a local attorney, James W. Barkley, to support its fee request. See McAfee, 738 F.3d at 91 ("A fee applicant is obliged to show that the requested hourly rates are consistent with the prevailing market rates in the relevant community for the type of work for which [the applicant] seeks an award. The evidence we have deemed competent to show prevailing market rates includes affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community.") (internal citation and quotation marks omitted). In the declaration, Mr. Barkley indicates that he is familiar with the legal services performed in this case, Mr. Boyd's educational background and experience, and the hourly rates charged by attorneys in the region with comparable knowledge, experience, and expertise. The declaration confirms that the hourly rate charged by Mr. Boyd is reasonable and consistent with the hourly rates charged by attorneys and other law firms with comparable knowledge, competency, and experience in this region.

Although the defendants contend that Mr. Boyd's hourly rate is excessive, they offer no evidence to refute Mr. Barkley's declaration, and instead question the extent of Mr. Boyd's experience in federal court. However, a basic Lexis search reveals over 20 federal cases in which Mr. Boyd was identified as counsel of record, and basic PACER searches reveal numerous others

that did not generate published opinions. The court is convinced that Mr. Boyd's federal litigation experience weighs in favor of awarding his requested fee, as do the quality of his legal work and the results he obtained for his client. Moreover, Mr. Boyd's hourly rate is not in excess of those approved in other recent federal cases involving attorneys with similar experience. See, e.g., McAfee, 738 F.3d at 91 (giving deference to the district court's determination that the $365.00 hourly rate billed by a senior associate was reasonable); Baber v. County of Frederick, No. 5:12CV037, 2013 U.S. Dist. LEXIS 101253, at *5 n.1 (W.D. Va. June 21, 2013) (finding that the $325.00 hourly rate charged by a senior associate was reasonable).

For all of these reasons, the court finds that the time expended and rates charged by counsel were reasonable, and that the relevant Johnson factors support the amount claimed. Accordingly, the court will grant CEP's request for attorneys' fees in the amount of $24,810.00.

## II. Expenses

CEP also seeks reimbursement for $1,850.06 in litigation expenses. This figure encompasses legal research fees, court reporting fees, and minor courier and travel expenses. The defendants have not raised any specific objections to the requested expenses. The court finds that the expenses were reasonably incurred, and that CEP is entitled to reimbursement under the applicable provisions of the parties' agreements.

## Conclusion

For the reasons stated, CEP's motion for attorneys' fees and expenses will be granted, and CEP will be awarded fees and expenses in the total amount of $26,660.06. The Clerk is directed to send copies of this memorandum opinion and accompanying order to all counsel of record.

ENTER: This 22d day of July, 2014.

_____
Chief United States District Judge